IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**HALEY OLSON**,

       Plaintiff,

      v.

**GRANT COUNTY**, a government entity, **GLENN PALMER**, an individual, and **JIM CARPENTER**, an individual,

       Defendants.

Case No. 2:20-cv-01342

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE**

Meredith Holley, Law Office of Meredith Holley, 207 E 5th Avenue, Suite 254, Eugene, OR 97401. Attorney for Plaintiff.

Aaron Hisel and Rebeca A. Plaza, Law Offices of Montoya, Hisel and Associates, 901 Capitol Street NE, Salem, OR 97301. Attorneys for Defendants Grant County and Glenn Palmer.

Kenneth Crowley and Jill Conbere, Oregon Department of Justice, 1162 Court Street NE, Salem, OR 97301. Attorneys for Defendant Jim Carpenter.

**IMMERGUT, District Judge.**

Before this Court are Defendant Jim Carpenter's Motion for Summary Judgment, ECF 98, Defendants Grant County and Glenn Palmer's Motion for Summary Judgment, ECF 101, and Plaintiff Haley Olson's Amended Motion for Partial Summary Judgment, ECF 117, and Motion for Adverse Inference, ECF 123. For the following reasons, this Court GRANTS Defendants Carpenter, Grant County, and Palmer's Motions for Summary Judgment and DENIES Plaintiff's Partial Motion for Summary Judgment and Motion for Adverse Inference.

## STANDARDS

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

## BACKGROUND

At all relevant times, Plaintiff Haley Olson was a resident of Grant County, Oregon. ECF 94 at ¶ 4. Defendant Grant County is a county government entity in Oregon. *Id.* at ¶ 5. At all

PAGE 2 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

relevant times, Defendant Glenn Palmer was employed as the Grant County Sheriff, *id*. at ¶ 6, and Defendant Jim Carpenter was employed as the Grant County District Attorney, *id*. at ¶ 7.

In January 2019, Plaintiff was arrested in Idaho on marijuana-related drug trafficking charges. *Id*. at ¶ 8; ECF 102-2 at 2–3. Plaintiff signed a Voluntary Consent to Search form allowing the Idaho State Police to search her mobile phone. ECF 100-2, Ex. 8, at 1. The Idaho State Police searched Plaintiff's cell phone by downloading an extraction of the contents of her phone. ECF 94 at ¶ 8.

On or about January 23, 2019, Defendant Palmer received information that a person from Grant County was arrested in Jerome County, Idaho, and that a business card of Grant County Deputy Tyler Smith was found in the arrestee's vehicle. ECF 100-3, Ex. 9, at 1.[1] Although Defendant Palmer did not believe that either Plaintiff Olson or Deputy Smith had committed a crime in Oregon, he was concerned that Deputy Smith was involved with someone arrested on drug charges and decided to investigate. ECF 104-3 at 8, 10. Defendant Palmer spoke with an Idaho trooper, who was "very reluctant" to discuss Plaintiff's arrest and was unwilling to share Plaintiff's cell phone extraction. *Id*. at 6–7. Defendant Palmer then asked Defendant Carpenter to request Plaintiff's cell phone data from the Jerome County prosecutor. *Id*. at 9; ECF 102-4 at 14, 17.

Neither Defendant Palmer nor Defendant Carpenter ever sought a warrant to review the contents of Plaintiff's phone. ECF 102-4 at 22; ECF 121-1 at 8. Defendant Carpenter "didn't

---

[1] It is unclear how Defendant Palmer learned of Plaintiff Olson's arrest; in his Motion for Summary Judgment, he states that "Idaho State Police contacted [Defendant Palmer] to notify him that . . . they had found the business card of one of his deputies during the arrest," ECF 101 at 7, but Defendant Palmer stated in his deposition, "I don't recall how I found out" and suggested that Undersheriff Mobley may have told him about it. ECF 121-3 at 20.

believe a warrant was necessary because [Plaintiff] had consented . . . to an extraction of her phone," and because Defendant Carpenter was not considering criminal charges. ECF 104-1 at 11–12.

On January 30, 2019, Defendant Carpenter sent a letter to the lead prosecutor of the Jerome County, Idaho Prosecutor's Office requesting a copy of Plaintiff Olson's cell phone extraction. ECF 104-2 at 1. In that letter, Defendant Carpenter wrote that "[t]he Sheriff of Grant County, Glenn Palmer, approached [Carpenter] and indicated that one of his patrol deputies [Tyler Smith] appears to be in an extramarital relationship with Olson, and likely has engaged in activities with Olson that will affect his employment with the Sheriff's Office." *Id.* Defendant Carpenter requested a copy of the cell phone extraction and represented that it would "be used only for internal purposes, and will not be disseminated to any other agencies or third parties." *Id.*

The Jerome County prosecutor agreed to provide Defendant Carpenter with a copy of the extraction. ECF 99-3 at 1. On February 26, 2019, Defendant Carpenter's legal assistant sent a blank flash drive to the Jerome County Prosecutor's Office for their use in copying the phone extraction. ECF 98 at 3; ECF 100-6, Ex. 12, at 1. The extraction came to Defendant Carpenter on a thumb drive, which he sealed in an envelope and kept in his office. ECF 99-1 at 20.

Defendant Carpenter testified that he was interested in Plaintiff's phone extraction in case it contained evidence of any misconduct by Deputy Tyler Smith that would limit Smith's ability to be used as a witness in other cases. ECF 121-1 at 7–8. Defendant Carpenter specifically testified that he was looking into whether the phone contained any material that Defendant Carpenter would be required to disclose in future criminal proceedings in which Deputy Smith served as a witness, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* Before reviewing the

PAGE 4 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

extraction, Defendant Carpenter asked two detectives, one from the Oregon State Police and one from the Deschutes County Sheriff's office, if they would review the phone contents because he wanted to avoid reviewing it himself. ECF 99-1 at 25, 37–38. Both detectives declined to review the extraction because there was no related criminal investigation. *Id.* at 37–38. Defendant Carpenter then reviewed the contents of Plaintiff Olson's phone, including text messages and photographs, more than ten of which were nude photographs and photographs depicting sexual acts between Plaintiff Olson and Deputy Smith. *Id.* at 41–45. After concluding the extraction contained no criminal evidence, Defendant Carpenter deleted the contents of the flash drive. *Id.* at 48–49.

On April 10, 2019, Defendant Carpenter wrote a letter to Defendant Palmer, informing him that "[a]t [Defendant Palmer's] request, [Defendant Carpenter] obtained a phone dump from the telephone of Haley Olson." ECF 99-4 at 1. Defendant Carpenter noted that based on the review of the phone's contents, "Deputy Tyler Smith is or has been in an intimate relationship with Haley Olson," but "no evidence in the information provided . . . would show Deputy Tyler Smith could be found to have engaged in conduct which could subject him to discipline or sanction." *Id.* On April 11, 2019, Defendant Palmer wrote in a letter to Deputy Smith that "the investigation into [Smith's] involvement with Haley Olson and her arrest in Idaho will not go any further." ECF 81-4, Ex. 12, at 2.

Defendant Palmer alleges that "[Defendant Carpenter] asked [him] if [he] wanted a copy of the thumb drive of the cell phone dump from [Plaintiff's] phone, and [Defendant Carpenter] told [Defendant Palmer] there was [sic] things on the cell phone that, 'once you see them, you can't unsee them,'" . . . [Defendant Palmer] told [Defendant Carpenter] 'no.'" ECF 100-7, Ex. 13,

PAGE 5 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

at 4. Defendant Palmer also described a second instance in which Defendant Carpenter offered him a copy of the thumb drive, which Defendant Palmer also declined. *Id.* at 6–7.

Defendant Carpenter, for his part, claims he did not tell Defendant Palmer what was on Plaintiff's phone or ask Palmer if he wanted to see the phone's contents. ECF 121-1 at 16. Neither Defendant Palmer nor Defendant Carpenter allege that Carpenter actually provided Palmer a copy of the thumb drive.

Plaintiff alleges that, at various points in 2019 and in various public places, strangers began making derogatory comments to her and alluding to the circulation of her nude photos. ECF 94 at ¶¶ 10–12, 14–15, 18; ECF 105-3 at 1. One such statement allegedly came from Jim Sproul, a now-deceased member of the community who may have been friends with Defendant Palmer. ECF 121-22 at 1. Defendant Palmer denies that he ever spoke with Jim Sproul about the investigation or the contents of Plaintiff's phone. ECF 102-4 at 26. Defendant Palmer also denies ever seeing any nude photos of Plaintiff or Deputy Smith. *Id.* at 28–29.

On December 4, 2019, Plaintiff sent Defendant Carpenter a public records request seeking all relevant communications about the cell phone extraction. ECF 99-5 at 1. That same day, Defendant Carpenter wrote a letter to Plaintiff explaining the circumstances of his review and that he had destroyed his copy of the cell phone extraction and reformatted the flash drive to avoid any risk of the content being disseminated elsewhere. ECF 99-6 at 1.

This case was originally filed in Grant County Circuit Court on April 14, 2020. ECF 1-1 at 1. Defendants removed the case to federal court from the Grant County Circuit Court on August 10, 2020. ECF 1-1 at 1. Defendant Carpenter moved to dismiss Plaintiff's complaint on September 4, 2020. ECF 9. Upon the recommendation of a magistrate judge, that motion was denied. ECF 27.

Defendant Carpenter filed a Motion for Summary Judgment on May 12, 2022. ECF 98. Defendants Grant County and Glenn Palmer filed a Motion for Summary Judgment on May 16, 2022. ECF 101. Plaintiff Olson filed a Motion for Partial Summary Judgment on May 16, 2022, ECF 103, which she amended on June 6, 2022, ECF 117. Also on June 6, 2022, Plaintiff filed a Motion for Adverse Inference. ECF 123.

## DISCUSSION

### A. Plaintiff's Motion for Adverse Inference

As an initial matter, Plaintiff has requested that this Court apply an adverse inference, both as a jury instruction and in considering the cross-motions for summary judgment, regarding Defendant Carpenter's allegedly intentional destruction of Plaintiff's phone contents and Defendant Palmer's failure to preserve the phone contents. ECF 123 at 4. Defendants oppose the motion. ECF 135, 140. Because any adverse inference would impact the summary judgment analyses, this Court addresses it at the outset, concludes that no adverse inference is warranted against either Defendant, and denies Plaintiff's request for sanctions. ECF 123.

#### 1. Legal Standards

Federal Rule of Civil Procedure 37(e) provides, "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court" may (1) order necessary measures to cure any resulting prejudice to a party; or, upon finding an intent to deprive another party of the information, (2) "presume that the lost information was unfavorable to the party"; (3) "instruct the jury that it may or must presume the information was unfavorable to the party"; or (4) "dismiss the action or enter a default judgment." Fed R. Civ. P. 37(e). Thus, to succeed on a Motion for Adverse Inference, the

moving party must establish that (1) electronically stored information should have been preserved in anticipation of litigation; (2) the electronic information was lost because another party failed to take reasonable steps to preserve it; (3) the party that failed to preserve the information "acted with the intent to deprive another party of the information's use"; and (4) that the information "cannot be restored or replaced through additional discovery." *See id.*

### 2. Analysis

#### a. Plaintiff's Motion for Adverse Inference Against Defendant Carpenter

Plaintiff asks this Court to apply an adverse inference as to Defendant Carpenter in this Court's jury instructions and its analyses of Plaintiff's Motions for Summary Judgment. ECF 123 at 4–7. Specifically, Plaintiff asks this Court to find "that [Defendant Carpenter's] search and seizure of [Plaintiff's] phone exceeded any consent she gave to any party to search her phone." *Id.* at 7. Plaintiff argues that the copy of the phone extraction reviewed by Defendant Carpenter is now unrecoverable and that Carpenter "permanently hid the evidence of his actions by destroying the phone contents." *Id.* Defendant Carpenter asks this Court to deny Plaintiff's motion because he had no reason to anticipate this litigation, did not know the copy of Plaintiff's phone extraction was the only copy in existence, and had no intent to deprive Plaintiff of the information on her own cell phone. ECF 135 at 4–8.

This Court is unpersuaded that any adverse inference against Defendant Carpenter is appropriate. First, Plaintiff has not established that Defendant Carpenter had a duty to preserve Plaintiff's phone extraction in anticipation of litigation. Defendant Carpenter had no reason to anticipate litigation in this case when he deleted Plaintiff's phone contents; Carpenter deleted the phone's contents around April 2019, ECF 104-1 at 20, and Plaintiff did not contact Carpenter about this matter until December 2019, ECF 99-5 at 1. Further, although it is undisputed that

PAGE 8 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

Defendant Carpenter deleted the phone extraction, Plaintiff has failed to prove Defendant Carpenter intended to deny her the use of that information. As Defendant Carpenter never possessed the original extraction, and only received a copy from the Jerome County prosecutor's office, Defendant Carpenter "had reason to believe that the Idaho state officials still had the original extraction, and [that] Plaintiff was in possession of the phone from which the extraction was taken." ECF 135 at 2.

Additionally, although the *exact* information contained in Plaintiff's phone extraction may be irreplaceable, the information that is vital to this case is far from lost. Rather, Defendant Carpenter concedes that he viewed more than ten nude photos of Plaintiff and Deputy Smith. ECF 99-1 at 41–45. Further, this case hinges not on what exactly Defendant Carpenter saw, but on the actions he took to view those contents and any subsequent dissemination thereof. Despite this inconvenience, the evidence in the record supports Defendant Carpenter's assertion that he did not anticipate this litigation or intend to deprive Plaintiff of the information on her own cell phone at the time he destroyed the phone extraction. Plaintiff's argument that Carpenter's destruction of the extraction means he necessarily exceeded the scope of her consent is similarly unpersuasive; the scope of Plaintiff's consent is governed by the Fourth Amendment, not by Rule 37. Accordingly, this Court denies Plaintiff's motion for adverse inference as to Defendant Carpenter.

### b. Plaintiff's Motion for Adverse Inference Against Defendant Palmer

Plaintiff also moves this Court for an adverse inference against Defendant Palmer because he failed to take reasonable steps to preserve Plaintiff's phone extraction. ECF 123 at 8. Plaintiff argues that this Court should apply an adverse inference against Defendant Palmer because he "should have reasonably anticipated litigation over the search and seizure of

[Plaintiff's] cell phone extraction," and failed to take any steps to preserve that extraction. *Id.* at 8–9. Plaintiff also contends that an adverse inference is appropriate as to whether Defendant Palmer's involvement in the search of Plaintiff's phone "exceeded any consent she gave to any party." ECF 123 at 8–9. Defendant Palmer asks this Court to deny Plaintiff's motion because he never possessed a copy of Plaintiff's phone extraction, never knew of Defendant Carpenter's plans to delete that information, had no authority over Defendant Carpenter, and had no reason to anticipate this litigation. ECF 140 at 4–10.

This Court finds no adverse inference is appropriate against Defendant Palmer for his conduct regarding Plaintiff's phone contents. Defendant Palmer, like Defendant Carpenter, had no reason to anticipate this litigation or the necessary preservation of Plaintiff's phone contents for such litigation. Defendant Palmer, as Sheriff of Grant County, also had no supervisory authority over District Attorney Carpenter to mandate the protection of that information even if Palmer so desired. Additionally, Defendant Palmer took no actions to destroy the information at issue and thus could not have acted with any intent to deprive Plaintiff of such information. Finally, as noted above, the information that is vital to this case may be restored through additional discovery. Contrary to Plaintiff's assertion, Defendant Palmer's failure to ensure the preservation of Plaintiff's phone extraction yields no logical conclusion that Palmer exceeded the scope of Plaintiff's consent during his part in this alleged search. For all these reasons, this Court denies Plaintiff's motion for adverse inference as to Defendant Palmer.

## B. Plaintiff's Constitutional Claim Against Defendant Carpenter

Defendant Carpenter asks this Court to grant summary judgment against Plaintiff's claim that Carpenter violated Plaintiff's Fourth Amendment rights by searching, seizing, accessing, or

viewing information and images on Plaintiff's cell phone. ECF 98 at 2.[2] Defendant Carpenter

further argues that he is entitled to qualified immunity. *Id.* at 11–13.[3] This Court finds that

Defendant Carpenter is entitled to qualified immunity. Accordingly, this Court grants Defendant

Carpenter's Motion for Summary Judgment.

      As a threshold matter, Defendant Carpenter denies that he violated Plaintiff's Fourth

Amendment rights and asserts that he "was not required to secure a warrant before accessing

data that Plaintiff had consented to provide to the Idaho State Police." ECF 98 at 8. Defendant

Carpenter relies on three federal statutes that condone the sharing of information by law

enforcement agencies to support his position. *Id.* at 8–9. Defendant Carpenter further argues that

because the Idaho officials did not inform him of any limits on Plaintiff's consent, he had no

reason to believe viewing the extraction would be unlawful. *Id.* at 9. Finally, Defendant

Carpenter argues that Plaintiff's claims that he disseminated the contents of her phone are

unsupported by evidence. *Id.* at 6.

---

[2] Plaintiff's Fourth Amended Complaint alleges violations of her rights under the First, Fourth, and Fourteenth Amendments. ECF 94 at ¶¶ 24–26. Plaintiff has clarified, however, in her response to Defendant Carpenter's Motion for Summary Judgment that "[t]he sole claim against Defendant Carpenter in Plaintiff's Fourth Amended Complaint is Plaintiff's First Claim for Relief under 42 U.S.C. § 1983, which alleges that Defendant Carpenter violated the Fourth Amendment in his search and seizure of Plaintiff's phone contents." ECF 106 at 11. Plaintiff has further clarified that her sole constitutional claim against Defendant Palmer and Defendant Grant County is likewise based on liability under the Fourth Amendment. ECF 102 ¶ 3; ECF 102-1 at 1. As such, this Court refers to Plaintiff's constitutional claim as a Fourth Amendment claim.

[3] Defendant Carpenter also raises the affirmative defense of prosecutorial immunity in his Answer, ECF 116 at ¶ 20, which Plaintiff moves against in her Motion for Partial Summary Judgment, ECF 117 at 21. Defendant Carpenter also raised the issue of prosecutorial immunity at oral argument. ECF 147. Because Defendant Carpenter did not raise prosecutorial immunity in his Motion for Summary Judgment, ECF 98, this Court declines to address the issue.

PAGE 11 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

### 1. Legal Standard

The Fourth Amendment to the Constitution ensures the right of citizens to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. Though usually applied in the context of criminal investigations, the Supreme Court has long held that the Fourth Amendment applies to official conduct in a variety of civil and administrative activities. *See, e.g.*, *Camara v. Mun. Ct.*, 387 U.S. 523 (1967) (housing code inspections); *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656 (1989) (drug tests of government employees); *O'Connor v. Ortega*, 480 U.S. 709 (1987) (searches and seizures by government employers of employees' private property); *New Jersey v. T.L.O*, 469 U.S. 325 (1985) (school official's search of student's purse).

"The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). Officers are usually required to obtain a search warrant prior to conducting a Fourth Amendment search, but no warrant is required when an individual with the authority to do so consents to the search. *See Georgia v. Randolph*, 547 U.S. 103, 109 (2006). The determination of whether consent was properly given "must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the [object of the search]?" *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (quotation marks and citation omitted).

The scope of what may be searched pursuant to a party's consent is likewise measured by a standard of "'objective' reasonableness[—]what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S.

248, 251 (1991) (citations omitted). Exceeding the scope of consent in conducting a search constitutes a Fourth Amendment violation. *See id.*

### 2. Analysis

This Court notes at the outset that neither party disputes that Plaintiff has a reasonable expectation of privacy in the contents of her cell phone. The parties do dispute whether Defendant Carpenter conducted a search within the meaning of the Fourth Amendment when he obtained and reviewed a digital copy of the contents of Plaintiff's phone from the Idaho State Police. ECF 128 at 3–4. Neither the Ninth Circuit nor the Supreme Court has held that a "subsequent viewing of a copy of electronic data from a cell phone constitutes a search." *See United States v. Hulscher*, 4:16-CR-40070-01-KES, 2017 WL 657436, at *2 (S.D. Feb. 17, 2017) (finding no Ninth Circuit or Supreme Court precedent has addressed this question). For purposes of this Opinion, this Court assumes—without deciding—that a subsequent viewing of a digital copy of electronic material constitutes a search under the Fourth Amendment. *See Riley v. California*, 573 U.S. 373, 386 (2014) (holding that "officers must generally secure a warrant before conducting . . . a search [of data on cell phones].").

When conduct constitutes a "search" under the Fourth Amendment, the conduct is constitutional only if the officer obtains a warrant or if the conduct falls within certain categories of permissible warrantless searches. *Lange v. California*, 141 S. Ct. 2011, 2017 (2021). One such category is a consent search, wherein an individual voluntarily consents to the search. *Fernandez v. California*, 571 U.S. 292, 298 (2014). The scope of a search authorized by consent "is limited by the terms of its authorization." *Walter v. United States*, 447 U.S. 649, 656 (1980). Where consent is given by a third party, a search is constitutional where the police reasonably believe that the third party has authority to consent to the search. *Rodriguez*, 497 U.S. at 186.

It is undisputed that Plaintiff consented to a search of her phone by signing a form titled "Idaho State Police Voluntary Consent to Search," which includes two case numbers and reads: "I, Haley Olson, hereby authorize the Idaho State Police, or its agent to conduct a search of my . . . Mobile Device[.]" ECF 100-2, Ex. 8, at 1. Plaintiff argues that the scope of her authorization clearly extended only to the Idaho State Police for the purpose of their narrow criminal investigation related to her arrest. Plaintiff further argues that no reasonable person would believe that Idaho officials had authority to consent to Defendant Carpenter's review of Plaintiff's phone based on the clear language of the consent form. Defendant Carpenter, for his part, argues that he reasonably relied on the Idaho officials consent to review the cell phone extraction because it was his understanding that Plaintiff consented to a cell phone extraction and that the Idaho officials "were willing to provide it to [Defendant Carpenter]." ECF 104-1 at 9. Defendant Carpenter argues that it was reasonable to rely on Idaho's consent because they did not inform him of any limitations to Plaintiff's consent to the search of her phone. ECF 98 at 3.

Fourth Amendment jurisprudence related to cell phones and digital information is both relatively recent and still evolving. *See Riley*, 573 U.S. at 401–02 (finding that the search incident to arrest exception does not apply to cell phones, though "other case-specific exceptions may still justify a warrantless search of a particular phone"); *see also* Orin Kerr, *Searches and Seizures in a Digital World*, 119 HARV. L. REV. 531, 533 (2005) (describing the application of the Fourth Amendment to the search of digital evidence as "surprisingly unclear"). In support of his argument that there was no Fourth Amendment violation, Defendant Carpenter emphasizes that, "[t]he sharing of information obtained by law enforcement agencies is standard practice in many contexts." ECF 98 at 8; *see* 18 U.S.C. § 2517(1) (authorizing the disclosure of the contents of wire, oral, or electronic communications between law enforcement agencies), 21 U.S.C. §

PAGE 14 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

1706(a) (authorizing the sharing of certain information related to drug trafficking between law enforcement agencies), and 5 U.S.C. § 552a(b) (enumerating exceptions to the Privacy Act's general protections of personal information).

This Court concludes that it need not determine whether Defendant Carpenter's conduct constituted a Fourth Amendment violation because it finds that Defendant Carpenter is entitled qualified immunity, as his actions were not in violation of clearly established law.

### 3.  Whether Defendant Carpenter is entitled to qualified immunity

#### a.  Legal Standard

"The doctrine of qualified immunity protects government officials from liability for civil damages . . . ." *Wood v. Moss*, 572 U.S. 744, 745 (2014); *see also Krainski v. Nev. ex rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts. And reasonableness of official action, in turn, must be 'assessed in light of the legal rules that were clearly established at the time [the action] was taken.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (internal citation omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "The privilege is an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (internal quotation marks omitted) (emphasis omitted) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). For this reason, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest

PAGE 15 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). Qualified immunity, however, is only an immunity from suit for damages, it is not an immunity from suit for declaratory or injunctive relief. *See L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993).

In her Fourth Amended Complaint, Plaintiff seeks "an injunctive order against all Defendants instructing them to preserve all downloaded cell phone data downloaded from Plaintiff's phone, refrain from accessing such data, and return that data to Plaintiff or transfer it under seal, in trust, to this Court, without retaining any of the data." ECF 94 at ¶ 45. The undisputed evidence before this Court shows that Defendant Carpenter deleted the downloaded cell phone data from Plaintiff's phone. ECF 104-1 at 20. There has been no evidence presented that any of the defendants have retained any copies. As such, Plaintiff's request for injunctive relief is moot, and the only remaining relief that Plaintiff seeks is damages.

### b.   Analysis

This Court finds that Defendant Carpenter is entitled to qualified immunity because his actions did not violate "clearly established law" such that "every 'reasonable official would [have understood] that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Where a defendant properly raises the defense of qualified immunity, "[i]t is the plaintiff who bears the burden of showing the rights allegedly violated [are] clearly established." *Shafer v Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal quotation marks omitted) (citation omitted). Plaintiff has not met that burden. Plaintiff cites to no case that clearly establishes that at the time of Defendant's alleged search, Defendant would have been on notice that a law enforcement official violates the Fourth Amendment when he or she reviews a data

PAGE 16 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

extraction taken from an individual's cell phone where that individual consented to the extraction, and where the extraction was shared with the reviewer by law enforcement. Indeed, at the time that Defendant Carpenter reviewed the copy of Plaintiff's cell phone extraction, neither Ninth Circuit nor Supreme Court precedent clearly established that a "subsequent viewing of a copy of electronic data from a cell phone constitutes a search." *See Hulscher*, 2017 WL 657436 at \*2. As such, Defendant Carpenter is entitled to qualified immunity because there is no clearly established case law that would have put him on notice that his actions constituted a search under the Fourth Amendment at all, let alone an unreasonable search.

Plaintiff relies primarily on two cases to support her argument that Defendant should have been on notice that his subsequent review of the extraction without a warrant was a violation of Plaintiff's Fourth Amendment right. Neither illustrate that Defendant would have been on notice, at the time he reviewed Plaintiff's cell phone data, that his actions were in violation of clearly established law. The first, *Hulscher*, is an unpublished case from outside the Ninth Circuit, and therefore cannot have put Defendant on notice that his actions were potentially in violation of Plaintiff's Fourth Amendment rights. 2017 WL 657436 at \*4. Moreover, *Hulscher* concerned the subsequent viewing of a cell phone extraction in a separate criminal case, and the extraction was first obtained via a warrant. *Id.* at \*1–\*2. In the present case, by contrast, Defendant did not review the extraction for any criminal proceeding, and the extraction was first obtained via Plaintiff's consent. These factors render *Hulscher* sufficiently distinct that it could not have provided Defendant notice that his actions were in violation of clearly established law.

Plaintiff next points to *Riley v. California*, in which the Supreme Court held that "officers must generally secure a warrant before conducting . . . a search [of data on cell phones]." 573

U.S. 373, 386 (2014). *Riley* stands for the proposition that a law enforcement officer cannot rely on the "search incident to arrest" exception to the warrant requirement to search the cell phone of an individual under arrest. *Id.* at 401. It is not instructive in the present case, which does not involve application of the "search incident to arrest" exception nor the search of a cell phone itself, rather than the review of a cell phone extraction. As such, it would not have put Defendant on notice that his actions were in violation of clearly established law. Defendant Carpenter is thus entitled to qualified immunity, and his Motion for Summary Judgment is granted.

**C. Plaintiff's Constitutional Claim Against Defendant Palmer**

Defendant Palmer asks this Court to grant summary judgment against Plaintiff's claim that Palmer violated Plaintiff's Fourth Amendment rights by searching, seizing, accessing, or viewing information and images on Plaintiff's cell phone. ECF 101 at 12. Defendant Palmer further argues that he is entitled to qualified immunity. *Id.* at 14–15.

Plaintiff seeks to hold Defendant Palmer liable for a Fourth Amendment violation on two theories: first, that Defendant Palmer personally possessed Plaintiff's phone contents, or, in the alternative, that Defendant Palmer can be liable as a supervisor of individuals—such as Defendant Carpenter—who did personally possess Plaintiff's phone contents. ECF 120 at 10–14, 18–21. This Court finds that Defendant Palmer did not violate Plaintiff's Fourth Amendment rights. There is no evidence in the record that Defendant Palmer ever possessed Plaintiff's phone extraction such that he could potentially be held personally liable for an unreasonable search under the Fourth Amendment. Furthermore, Defendant Palmer cannot be held liable for the conduct of others based on a theory of supervisory liability. Moreover, even if Defendant Palmer did violate Plaintiff's Fourth Amendment rights, this Court finds that Defendant Palmer would

be entitled to qualified immunity. Accordingly, this Court grants Defendant Palmer's Motion for Summary Judgment.

### 1.  Legal Standard

"An official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists 'between the supervisor's wrongful conduct and the constitutional violation.'" *Felarca v. Birgeneau*, 891 F.3d 809, 819–20 (9th Cir. 2018) (citation omitted). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* (citation omitted). Officers within the chain of command may be liable if they "ordered or failed to stop any action that [they] knew or reasonably should have known would cause" constitutional violations. *Id.* at 821 (internal quotation marks omitted) (remanding to grant summary judgment because plaintiffs failed to provide evidence that supervisors did so).

### 2.  Analysis

Defendant Palmer argues that summary judgment is warranted on Plaintiff's constitutional claim because he did not personally search, seize, access, or view the contents of Plaintiff's phone. ECF 101 at 13. Rather, Defendant Palmer states that his role in the instant case was limited to "relay[ing] the information he received from the Idaho authorities to the District Attorney, including that Plaintiff had consented to a data dump of her cell phone." *Id.*

Plaintiff argues that "a reasonable juror could find Sheriff Palmer actually possessed the phone contents." ECF 120 at 16. Plaintiff offers no admissible evidence to support her argument

that Defendant Palmer possessed or viewed the contents of her cellphone. *Orr v. Bank of America, NT & SA*, 285 F3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").[4] Instead, the evidence in the record shows that Defendant Palmer never personally possessed or viewed the contents of Plaintiff's phone. ECF 99 at ¶ 11; ECF 100-7 at 4, 6–7; ECF 102-4 at 29–30.

If Defendant Palmer did not personally possess and view the contents of Plaintiff's cellphone, Defendant Palmer can only be held personally liable if a "sufficient causal connection exists 'between the supervisor's wrongful conduct and the constitutional violation.'" *Felarca*,

---

[4] In support of her argument that Defendant Palmer possessed and viewed the contents of her cell phone, Plaintiff cites to a comment made by Jim Sproul, who is now deceased. According to Plaintiff, Mr. Sproul told her that "Defendant Palmer had shown him pictures from [Plaintiff's] phone." ECF 94 at ¶ 18. This is an out of court statement that, if offered for its truth, would constitute hearsay. Fed. R. Evid. 801. Plaintiff attempts to circumvent this issue by claiming that the statement would not be offered for its truth, but instead to demonstrate Plaintiff's state of mind with respect to the timing of her tort claim notices. ECF 120 at 36. Even if the Court were to admit this statement for the limited purpose of showing Plaintiff's state of mind, the statement would not be evidence that Defendant Palmer possessed or viewed the contents of her cell phone. As such, there is no genuine dispute of material fact in the record about whether Defendant Palmer ever personally possessed or viewed the contents of Plaintiff's phone.

In her Response to Defendants Grant County and Palmer's Motion for Summary Judgment, Plaintiff suggests that testimony from Tahnee Helms, ECF 100-8, Ex. 14, would not be admitted at trial for its truth, "but to demonstrate the harassment [Plaintiff] experienced." ECF 120 at 15, n.1. At oral argument, Plaintiff stated that the Helms testimony would be offered for its truth. Taken in the light most favorable to Plaintiff, the Helms testimony shows that Zach and Abbie Mobley possessed two photos of Plaintiff, one of them being a nude photo, within a month or two of Plaintiff's arrest in Idaho. ECF 100-8, Ex. 14, at 5, 18. Helms testified that she could not recall whether she saw the photographs before or after Plaintiff's arrest. *Id.* at 5. Helms's testimony makes no mention of Defendant Carpenter, Defendant Palmer, or Grant County, and therefore does not support Plaintiff's argument that a genuine dispute of material fact exists as to whether Defendant Palmer ever possessed the cell phone extraction. This Court notes that while Zach and Abbie Mobley were named as defendants in Plaintiff's First, Second, and Third Complaints, ECF 1, ECF 8, ECF 32, Plaintiff eliminated them as defendants in her Fourth Amended Complaint, ECF 94.

PAGE 20 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

891 F.3d at 820. Plaintiff argues that there remain issues of fact as to whether Defendant Palmer either set in motion or knowingly refused to terminate a series of events that led to Defendant Carpenter's viewing of her cell phone contents. ECF 120 at 16. Plaintiff's argument is unpersuasive and unsupported by admissible evidence in the record.

In *Felarca v. Birgeneau*, the Ninth Circuit considered the issue of supervisory liability in the Fourth Amendment use of reasonable force context. 891 F.3d at 819. The plaintiffs sued various University of California police department officers, as well as various University of California administrators, following a confrontation between protestors and police officers at the University of California, Berkeley. *Id.* at 810. The plaintiffs, a group of protestors, had attempted to set up encampments on the University of California, Berkeley campus, in violation of campus policy. *Id.* at 815. Pursuant to the campus policy, university police removed the tents, and used batons to effectuate that removal, injuring some protestors in the process. *Id.* The plaintiffs sued, alleging that the university administrators were liable for the actions of the police because they planned the police response and failed to stop the alleged assaults. *Id.* at 815, 819.

The Ninth Circuit noted that administrators outside of the chain of police command could not be held liable because they "had no supervisory authority" over the individuals that committed the alleged violations. *Id.* 820. For the administrators that were within the chain of command, the Ninth Circuit held that even assuming that the administrators "ordered police to remove the tents, acquiesced in the use of batons to effectuate removal of the tents, and learned that batons had been used during the afternoon protest and injuries had occurred," there was not a sufficient "degree of personal involvement or causal connection" between those actions and the alleged constitutional injuries to hold the administrators liable. *Id.* The administrators, the court concluded, "had no reason to assume that police would use force beyond the bounds of [the

university policy]" and in violation of the Fourth Amendment. *Id.* 820–21. Accordingly, the

Ninth Circuit held that there was no supervisory liability for the administrators. *Id.*

Plaintiff's claim fails for similar reasons. To begin with, Plaintiff has failed to produce

evidence to support a genuine dispute of material fact regarding the extent of Defendant Palmer's

"supervisory authority" over Defendant Carpenter. The admissible evidence before this Court

shows that Defendant Carpenter was acting in his role as District Attorney when he obtained and

reviewed the contents of Plaintiff's phone. ECF 99-1 at 10, 40, 49. Under Oregon law, the

District Attorney is an officer of the State of Oregon when carrying out their duties as

prosecutors, not an officer of the county. *Dickerson v. City of Portland*, No. 3:19-cv-01126-SB,

2020 WL 7391267, at *11 (D. Or. Dec. 16, 2020). Defendant Palmer therefore had no control

over the actions of Defendant Carpenter when the latter was acting on behalf of the State of

Oregon and not Grant County. A defendant cannot be "[a] supervisor[] of persons beyond their

control." *Felarca*, 891 F.3d at 820. As such, Defendant Palmer cannot be held liable for the

actions of Defendant Carpenter because he did not exercise "supervisory authority" over

Defendant Carpenter.

Nor does this Court find a genuine dispute of material fact regarding whether Defendant

Palmer "set[] in motion a series of acts by others" or "knowingly refus[ed] to terminate a series

of acts by others" over whom he did have "supervisory authority." *Id.* Even if Plaintiff could

show that Defendant Palmer had supervisory authority over Defendant Carpenter, there is not a

sufficient causal link between Defendant Palmer's request that Defendant Carpenter obtain and

view the cell phone contents and the alleged constitutional violation.

Plaintiff argues that Defendant Palmer "instructed [Defendant] Carpenter . . . to obtain

[Plaintiff's] phone extraction from Idaho to retaliate against and silence Deputy Smith;

PAGE 22 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL
SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE
INFERENCE

[Defendant] Carpenter got the phone contents, shared them with Undersheriff Mobley, and described them to [Defendant] Palmer." ECF 120 at 17-18.[5] As in *Felarca*, Defendant Palmer had no reason to assume that Defendant Carpenter would take actions in violation of the Fourth Amendment. *See Felarca*, 891 F.3d at 820–21. Plaintiff cites to no evidence in the record that Defendant Palmer ever explicitly directed Defendant Carpenter to seek the cell phone contents without first obtaining a warrant. There is also no evidence that Defendant Palmer encouraged Defendant Carpenter to share the content of Plaintiff's phone with himself or others within the Grant County Sheriff's Office. Defendant Palmer testified during his February 24, 2022 deposition that he "had no knowledge of what [Defendant Carpenter] was going to do . . . with the contents of [Plaintiff's] cell phone" and indeed never even asked Defendant Carpenter about his plans. ECF 121-3 at 49. In short, Plaintiff has failed to show a genuine dispute of material fact regarding whether Defendant Palmer was sufficiently connected to Defendant Carpenter's acts to be held liable for any alleged Fourth Amendment violation based on any alleged supervisory role.

---

[5] Plaintiff argues that there is a genuine dispute of material fact as to whether Defendant Carpenter was acting in his role as District Attorney or County Counsel when he obtained and reviewed the contents of Plaintiff's cell phone. ECF 120 at 26–27. This argument is not supported by the record, which shows that in all correspondence related to the incident at issue in this case, Defendant Carpenter used his District Attorney letterhead, ECF 102-5 at 25, 27, 28, which he stated at his deposition he used whenever he was acting as District Attorney, ECF 102-3 at 10.

This Court also finds that the evidence does not support an inference that Defendant Palmer enlisted Defendant Carpenter to obtain and review Plaintiff's cell phone contents to retaliate against either Plaintiff or Deputy Smith.

PAGE 23 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

### 3. Whether Defendant Palmer is Entitled to Qualified Immunity

Moreover, this Court finds that even if Defendant Palmer could be held liable based on supervisory liability for any Fourth Amendment violation that might have occurred during Defendant Carpenter's review of Plaintiff's cell phone, Defendant Palmer would nonetheless be entitled to qualified immunity.

As noted above, an officer is entitled qualified immunity unless their actions violate "clearly established law" such that "every 'reasonable official would [have understood] that what he [was] doing violate[d] that right.'" *Al-Kidd*, 563 U.S. at 741. Plaintiff argues that Defendant Palmer is not entitled to qualified immunity because "clearly established law requires authorization through a warrant or consent to access cell phone contents, including setting in motion and overseeing access to cell phone contents." ECF 120 at 19. As noted above, no case at the time of Defendant Carpenter's review of Plaintiff's phone extraction would have put Defendant Carpenter on notice that his actions were in violation of clearly established law. It follows that Defendant Palmer would likewise not have been on notice that requesting the review of Plaintiff's phone extraction would be in violation of clearly established law.

Plaintiff has cited to no authority to support her claim that Defendant Palmer's actions were unconstitutional under clearly established law. Defendant Palmer, by contrast, points to Supreme Court precedent holding that an officer's reliance on the approval of a deputy district attorney and magistrate, in the context of a warrant, supports a finding that the officer reasonably believed that their actions were constitutional. *See Messerschmidt v. Millender*, 565 U.S. 535, 554–55 (2012). Here, Defendant Palmer asked Defendant Carpenter to investigate the contents of Plaintiff's cell phone. He did not ask Defendant Carpenter to do so in a way that clearly violated the Fourth Amendment, particularly given his knowledge that Plaintiff had consented to a search

of her phone by the Idaho State Police. ECF 102-4 at 12–13, 17. In light of the evidence before this Court and relevant caselaw, this Court cannot say that Defendant Palmer's actions were "plainly incompetent" or a "knowing[] violat[ion] [of] law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Defendant Palmer is thus entitled to qualified immunity.

## D. Plaintiff's Claims Against Grant County

Defendant Grant County asks this Court to grant summary judgment against Plaintiff's claims against the County. ECF 101 at 16–17. Plaintiff brings two claims against Grant County: one constitutional claim brought pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and one state law claim for intrusion upon seclusion. ECF 94 ¶¶ 31–38, 39–44. For the following reasons, this Court grants Defendant Grant County's Motion for Summary Judgment with respect to Plaintiff's constitutional claim, and dismisses Plaintiff's state law claim for lack of jurisdiction.

### 1. Plaintiff's Fourth Amendment Claim

In addition to Plaintiff's constitutional claims against individual defendants Carpenter and Palmer, Plaintiff brings a constitutional claim against Grant County under 42 U.S.C. § 1983. Plaintiff alleges that Grant County violated her right to be free from unreasonable searches and seizures in violation of her Fourth Amendment rights. *Id.* at ¶ 33–38.

"Pursuant to 42 U.S.C. § 1983, a local government may be liable for constitutional torts committed by its officials according to municipal policy, practice, or custom." *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (citing *Monell*, 436 U.S. at 690–91). Alternatively, "the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (citations omitted).

PAGE 25 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

Plaintiff advances three separate *Monell* theories regarding Defendant Grant County's liability: (1) policy, practice, or custom, (2) actions of decisionmakers, and (3) failure to train. ECF 120 at 23. This Court analyzes each in turn.

### a.  Policy, Practice, or Custom

To establish *Monell* liability caused by a government policy or longstanding practice or custom, the plaintiff must show that (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy, longstanding practice, or custom; (3) the policy, practice, or custom amounted to "deliberate indifference to the plaintiff's constitutional right;" and (4) the policy, practice, or custom was "the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted).

Plaintiff argues that an issue of fact remains as to Defendant Grant County's policies, practices, or customs. ECF 120 at 23. According to Plaintiff, based on the testimony of Defendants Carpenter and Palmer, a "reasonable juror could find . . . that Grant County had a policy, practice, or custom of seizing cell phone data without authorization through a warrant or consent if the cell phone belonged to someone not accused of a crime." *Id.* at 24.

The evidence in the record, however, does not support Plaintiff's position. While Defendant Carpenter noted that he thought, in this instance, that a warrant was not necessary because he was not investigating Plaintiff for a crime, this testimony does not support an inference that this is a widespread policy within Grant County. ECF 99-1 at 14–15. Moreover, this position ignores the evidence that Defendant Carpenter also did not obtain a warrant because he believed that the Idaho officials had the authority to consent to share the information. *Id.* at 12; *see also Rodriguez*, 497 U.S. at 186 (finding no Fourth Amendment violation where a law enforcement official reasonably relies on the consent of a third-party). Plaintiff presents no

PAGE 26 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

evidence to suggest that Defendant Carpenter was acting pursuant to some actual policy as opposed to his own belief that, under the circumstances applicable to Plaintiff's particular situation, it was permissible to seek and review the cell phone contents without a warrant. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (noting that "policy" within the context of *Monell* liability "generally implies a course of action consciously chosen from among various alternatives"). Plaintiff has therefore failed to show a genuine dispute of material fact regarding whether Grant County had a policy, practice, and custom of accessing, without a warrant, cell phone data for those not accused of crimes.

Plaintiff next argues that she can sustain a *Monell* claim based on the Grant County Sheriff's Office's handling of electronic evidence. Plaintiff points specifically to the testimony of Sheriff Todd McKinley, in which Sheriff McKinley states that officers within the Grant County Sheriff's Office would preserve digital evidence for cases by burning that evidence onto a CD or printing hard copies of the evidence. ECF 121-5 at 6. Plaintiff also argues that while the Grant County Sheriff's Office "followed careful chain-of-custody, retention, and destruction policies regarding physical evidence," it had no similar policy regarding digital evidence. ECF 120 at 24–25.

Plaintiff's argument fails for multiple reasons. First, Plaintiff's claim that the Grant County Sheriff's Office "followed no set procedure for the destruction of electronic evidence" is belied by the record. *Id.* at 24. In his deposition, Sheriff McKinley states that the Grant County Sheriff's Office has a policy for treating electronic evidence as "evidence," suggesting that it is the policy of the Grant County Sheriff's Office to follow similar procedures regarding the chain-of-custody, preservation, and destruction for physical and digital evidence. ECF 121-5 at 8–9. Second, even if the Grant County Sherriff's Office had different policies regarding electronic and

PAGE 27 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

digital evidence, Plaintiff has not shown that such a policy would be facially unlawful. When a plaintiff seeks to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997) (citation omitted). Plaintiff has not done so here.

Finally, Plaintiff argues that the "Grant County Employee Handbook Policy V.D." can support a *Monell* claim. ECF 120 at 25. Plaintiff states that pursuant to Handbook Policy V.D., Grant County equipment, including Defendant Carpenter's computer, is not private and "is intended for Grant County business purposes." *Id.*; *see* ECF 121-19 at 10. Again, Plaintiff fails to show how this facially legal policy is carried out with "deliberate indifference" to "known or obvious consequences" of constitutional injuries. *See Brown*, 520 U.S. at 407. Plaintiff therefore cannot sustain a *Monell* claim based on this Grant County policy.

### b.  Actions of Decisionmakers

A municipality can be held liable for a constitutional injury if a person "whose edicts or acts . . . may fairly be said to represent official policy" causes a constitutional violation. *Brewster v. Shasta Cnty.*, 275 F.3d 803, 805 (9th Cir. 2001) (citing *Monell*, 436 U.S. at 694). Plaintiff argues that Defendant Palmer possessed final policymaking authority as to personnel investigations and discipline. ECF 120 at 26. Plaintiff likewise claims that Defendant Carpenter, as County Counsel, also had final decision-making authority regarding employee discipline within the Grant County Sheriff's Office. *Id.* at 26–27. Finally, Plaintiff claims that Undersheriff Zach Mobley—by virtue of his presence during a meeting where Plaintiff's phone contents were

PAGE 28 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

discussed and his presence during a meeting with county insurance regarding another employee investigation—had final policymaking authority. *Id.* at 27. Plaintiff's arguments are unavailing.

First, as this Court has previously discussed, the evidence in the record does not support the inference that Defendant Carpenter was acting in his role as County Counsel when he obtained and reviewed the contents of Plaintiff's cell phone. *See, e.g.*, ECF 102-3 at 27; ECF 102-4 at 20. As District Attorney, Defendant Carpenter acts as an agent of the State, not the County, *Dickerson*, 2020 WL 7391267 at *11, and therefore cannot be considered a final policymaker for Defendant Grant County, *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989) ("[W]hether a particular official has 'final policymaking authority' is a question of *state law*." (citation omitted)). Nor does the record support an inference that Defendant Palmer delegated his final decision-making authority to Defendant Carpenter. As Defendant Carpenter noted in his deposition, if Defendant Palmer had wanted to access the contents of Plaintiff's phone for the Sheriff Office's own internal investigation into Deputy Smith, Defendant Palmer "would have had to go through his own process to get [the phone contents]" because Defendant Carpenter was not "keeping the information for [Defendant Palmer]." ECF 99-1 at 50.

This Court likewise finds that no reasonable juror could assume that Undersheriff Mobley was a final policymaker for Grant County by virtue of his presence at two meetings regarding workplace misconduct investigations. ECF 120 at 27. Whether an individual is a final policymaker is a question of state law, and Plaintiff points to no authority to support her claim that either the mere title of "Undersheriff" or the presence of an individual at two meetings renders that person a final policymaker. There is no evidence in the record to support the inference that the actions of Undersheriff Mobley were not ultimately constrained by either the Grant County Sheriff's Office's official policies or by Defendant Palmer himself. *Cf. City of St.*

PAGE 29 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE

*Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies."). Nor is there evidence to support Plaintiff's argument that Defendant Palmer delegated any of his authority to Undersheriff Mobley.

Finally, Plaintiff's argument that Defendant Palmer is a final policymaker for Grant County fails as a matter of law. Plaintiff asserts that Defendant Palmer "testified that at the times relevant to this case, he did have final policymaking authority as to personnel investigations and discipline." ECF 120 at 26. Plaintiff also argues that "[t]he title[] Sheriff . . . may be enough to conclude [that Defendant Palmer] was a final policymaker for Grant County." *Id.* at 27. But there is a difference between being the final policymaker for the Grant County Sheriff's Office and being a final policymaker for Grant County. *See Gillette*, 979 F.2d at 1350 (concluding that a city fire chief who had authority to hire and fire employees, but did not establish the city's employment policy, was not a final policymaker for the city). Plaintiff points to no evidence that Defendant Palmer had authority to set Grant County's employment policies. Indeed, Defendant Palmer's own deposition testimony suggests that while he had discretion to initiate an employment investigation, he would nonetheless need to confer with other County decisionmakers to ensure that the County's employment policies were followed. ECF 102-6 at 7–8.

Even assuming that Defendant Palmer could be considered a final policymaker for Grant County, however, that fact alone is still not sufficient to hold Defendant Grant County liable. As

discussed above, even if Defendant Palmer's actions could be attributed to Defendant Grant County, those actions do not rise to the level of a constitutional violation. The evidence in the record does not show that Defendant Palmer ever possessed or viewed the contents of Plaintiff's phone nor instructed Defendant Carpenter to obtain the contents of Plaintiff's phone without first obtaining a warrant. Moreover, there is no evidence that Defendant Palmer encouraged Defendant Carpenter to share the content of Plaintiff's phone with himself or others within the Grant County Sheriff's Office. In short, Defendant Palmer committed no "constitutional tort" for which Defendant Grant County could be held liable, even if Defendant Palmer was an official with "final policy-making authority." *See Gillette*, 979 F.2d at 1346–47.

### c. Failure to Train

*Monell* liability can also arise from a failure to train, supervise, or discipline that amounts to a deliberate indifference to individuals' constitutional rights. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. To show deliberate indifference, Plaintiff must demonstrate that the need "'for more or different' action 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Hyun Ju Park v. City and Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)) (alteration in original).

Plaintiff argues that issues of fact remain as to whether "Grant County adequately trained law enforcement regarding search, seizure, use, retention, and destruction of electronic evidence and whether that failure to train was deliberately indifferent to the rights of the owners of

electronic evidence." ECF 120 at 27. Plaintiff bases this argument on her claim that "[t]here is no evidence that County personnel," including Defendants Carpenter and Palmer, "received any training regarding the County's expectations for handling electronic evidence." *Id.* at 28. But Plaintiff's allegation is unsupported by the evidentiary record. Indeed, Defendant Palmer stated in his deposition that "some of the other [sheriff's] deputies . . . were trained [in] downloading [] images on the computer." ECF 102-4 at 8. Defendant Carpenter also stated, in a letter sent to Plaintiff, that he has "some specialized training in the area of cell phone extraction and review." ECF 102-5 at 28. Based on this record, this Court cannot say that there is a genuine dispute of material fact regarding whether Grant County personnel received at least some training in the handling of electronic evidence. Nor can this Court say, based on the evidence before it, that Grant County failed to train its personnel in such a way that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390.

### 2. Plaintiff's Intrusion Upon Seclusion Claim

A district court may decline to exercise supplemental jurisdiction over state-law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c). When a district court dismisses all federal-law claims before trial, "the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity" will, in the usual case, "point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Because summary judgment is appropriate on all of the federal claims against Defendants, this Court, in its discretion, declines to exercise jurisdiction over Plaintiff's remaining

supplemental state law claim for intrusion upon seclusion. *See* 28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640–41 (2009) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims where court has dismissed claims over which it had original jurisdiction); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (same). Accordingly, this Court will not address the parties' remaining arguments concerning Plaintiff's state law claim. Plaintiff's state law claim is dismissed without prejudice. As of the date of the order of dismissal, Plaintiff will have thirty days to bring her state law claims in state court, should she desire to do so. *See* 28 U.S.C. § 1367(d).

### E. Plaintiff's Amended Motion for Partial Summary Judgment, ECF 117

Plaintiff moves for partial summary judgment on nine claims or affirmative defenses. ECF 117. When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

As discussed above, in assessing Defendants' Motions to Summary Judgment and viewing the evidence most favorable to Plaintiff, this Court finds that Plaintiff cannot show a genuine dispute of material fact and that Defendants are entitled to judgment in their favor, as a matter of law, on all of Plaintiff's claims. Plaintiff's Amended Motion for Partial Summary Judgment, ECF 117, is therefore denied as moot.

## CONCLUSION

For the foregoing reasons, this Court GRANTS Defendant Carpenter's Motion for Summary Judgment, GRANTS Defendants Palmer and Grant County's Motion for Summary Judgment, and DENIES Plaintiff's Motion for Partial Summary Judgment. Plaintiff's federal claims against Defendants Carpenter, Palmer, and Grant County are accordingly dismissed with prejudice. This Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim, which is dismissed without prejudice. As of the date of the order of dismissal, Plaintiff will have thirty days to bring her state law claims in state court, should she desire to do so.

**IT IS SO ORDERED**.

DATED this 22nd day of March, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 34 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS FOR ADVERSE INFERENCE